O’Neall J.
lentertainno doubt, that if the result of this case depended on the bonajides of the plaintiff’s judgments against his mother, a new trial must be granted; for I think that the proof is sufficient to shew, that they were fraudulent as against her creditors. But there are some views of the ease, which will entitle the plaintiff to retain his verdict.
Before i proceed to state them, it will be necessary to dispose of an objection which is preliminary to all others. It was supposed, that the plaintiff’s judgments could not be inquired into when they came in issue collaterally. But. it must be borne in mind, that the judgments are part of the plaintiff’s title, and are of course examinable by the defendant, unless they operate as an estoppel. To have this effect against the defendant, he must be either a party or privy to them. He is a stranger to the judgments, and is concluded by nothing in them. Whatever will avoid them, he may shew, to prevent them from having operation against him. As part of the plaintiff’s title, they are prima facie evidence of what they purport, but no more, and the defendant may shew, that they were fraudulent and covinous, and therefore void as against him. Treasurers v. Bates, 2 Bail. 380. 381. 1 Stark. on Ev. 242. 252. In a note to 1. Stark. on Ev. 242, it is said “when a person who has committed thefraud, attempts to avail himself of the act, so as to discharge himself from a previously existing obligation, or to ac *303 quire a benefit, the judgment thus obtained, is declared void as to that purpose,” — from which it would seem to be clear, that the judgments of the plaintiff against his mother, so far as he sets them up for the purpose of acquiring title to his mother’s slaves, may be sheAvn by the defendant, to be fraudulent and therefore void. For all other purposes, such as a justification to the sheriff for a levy and sale under them, or as part of a stranger’s title who purchased under them, they would be good. Sims et al v. Slacum 3 Cranch 300.
It appears that although the slaves were levied on, and sold under the plaintiff’s executions, yet that they were also levied on, under one of the executions in favor of Howard. This was beyond all doubt, a good authority to the sheriff to sell. In the case of McElwee v. Sutton 2 Bail. 361, two executions were levied on the slave, he was sold under one which at the time it ivas levied, was inoperative, the other was however operative ; the sale was referrd to the latter, and held to be good; and so in this case, if the sale had been made to a stranger, there could be no doubt that the same rule would have prevailed. And notwithstanding the sale is to a party to the fraudulent judgments, yet if it appears he has not received any benefit from them, the sale may be supported. On looking into the evidence, it appears that this plaintiff gave his note to the sheriff, Tart, for $363,98, which seems to be the whole sum arising from the sale applicable to his judgments. Upon this note he has been sued, and judgment recovered by the executor or administrator of Tart, the sheriff. The money is therefore to be regarded as paid to Tart by the plaintiff on his purchase, and if so, the executors of Howard have a plain and direct remedy against Tart’s representatives for the recovery of it.
It appears too, that nearly five years elapsed, after the sale of the negroes to the plaintiff by sheriff Tart, before they were re-sold by the defendant, at the suit of Howard. This alone might have sustained the plaintiff’s title, on the ground, that four years exclusive and adverse possession, would give him a good *304 title against his mother, and of course her creditors. But when added to the other view of the case, it shews that, the plaintiff’s title to the slaves, ought not to be disturbed, and that Howard’s executors ought to look to Tart, for the proceeds of the sale.

Motion for neto trial dismissed.

Johnson & Harper Js. concurred.